Lochhead *v.* Nierenberg, Appellant.

Argued October 3, 1940.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, PARKER, RHODES and HIRT, JJ.

508

*Raymond A. White, Jr.,* for appellant.

*David F. Maxwell,* with him *Edmonds, Obermayer &
Rebmann,* for appellee.

OPINION BY CUNNINGHAM, J., February 28, 1941:

At about four-thirty o'clock on the afternoon of April
29, 1939, Anne J. Lochhead was driving her 1937 Buick
sedan east on West Walnut Lane, in the city of Phila-
delphia. As she crossed the intersection of McCallum
Street, which runs north and south, her car was struck
by a one and one-half ton International truck owned
and operated by Barney Nierenberg, who had entered
the intersection from the north. Each street is thirty
feet in width from curb to curb, with traffic moving
both ways.

In her action in trespass for personal injuries and
damage to her car resulting from the accident, alleged
to have been caused by the negligence of the defendant,
no affidavit of defense was filed. The trial before
KNOWLES, J., and a jury, resulted in a verdict for the
plaintiff in the sum of $300. Defendant's motion for
judgment n. o. v. was denied and he has appealed from
the judgment entered on the verdict.

The defense interposed was that plaintiff had been
guilty of contributory negligence. The only assign-
ments are that the trial judge erred in refusing to con-
vict her of contributory negligence, as a matter of law,
by affirming defendant's point for binding instructions,
or granting his subsequent motion for judgment in his
favor, n. o. v.

Our sole inquiry, therefore, is whether or not, under
all the evidence, read in the light most favorable to

plaintiff, she was so clearly guilty of contributory negligence that the trial judge erred in submitting the case to the jury.

At the time of the accident plaintiff was alone in her car; Nierenberg said he was accompanied by "a colored fellow, but he didn't know nothing, he didn't see nothing." His truck was loaded with empty boxes used in connection with his soft drink business.

Plaintiff stated it had been raining prior to the accident, but had then stopped and "there was a little moisture, but not enough to make it slippery." According to her testimony, as she approached McCallum Street (going east on West Walnut Lane) she "put on the brake and slowed down, honked [her] horn, and went out just a little bit beyond the ...... edge of the curb of McCallum Street just enough so [she] could see up the street." She then "looked north, to the left, and ...... saw this truck coming quite a distance away," which she estimated as "about 150 feet." Her testimony continues: "...... I thought I had plenty of time. I glanced to the right, and there wasn't anything there. I thought I had plenty of time to cross, and I started across and got almost across when I was hit...... Q. When you say you were almost across the street when the truck hit you, what part of your car was where? I mean, where was the front of your car when you were struck? A. I think the front was just beyond the curb line of McCallum Street. Q. Which curb line? A. The southeast curb line. Q. In other words, your car had almost finished the crossing? A. Yes." She further testified the truck struck the left front door and fender of her car causing it to head northeast, its front colliding with the automobile of Hugh Farr which had just reached the intersection going west on Walnut Lane; after the collision the rear of her car rested in the gutter on the south side of Walnut Lane east of McCallum Street, while Nieren-

berg's truck was facing southeast with its front near the east curb line of McCallum Street.

Upon cross-examination the plaintiff was questioned relative to the speed at which the vehicles of the parties were traveling, and the pertinent portions of her testimony are as follows: "Q. How fast were you traveling at that time? [i. e. when the truck was first sighted.]: A. Oh, I had my foot on the brake; I was practically stopped at that time. Q. What do you call practically stopped? A. Well, I was stopped enough that if I put my foot further down on the brake I would have been stopped completely. ...... *I could have stopped it soon enough not to get out into the intersection if something was coming along.* ...... Q. And when you first saw [the truck] it was 150 feet away from you, coming, as you say, at what speed? A. I don't know." (Italics supplied.) Defendant says he was traveling at a speed of 15 to 18 miles per hour.

While plaintiff could not definitely fix her speed in miles per hour at the time she was about to cross the intersection and first saw the truck, her testimony shows she had her car under full control. Although unable to estimate the speed of the truck, she cannot be said to have tested an obvious danger in proceeding to cross an intersection 30 feet in width ahead of defendant's truck, as to which she had the right of way and which, according to her testimony, was then 150 feet from the intersection. Furthermore, it must be remembered that McCallum Street has two-way traffic. Having looked first to the left, as she was bound to do, and seeing the truck apparently a safe distance away she then looked to the right as was also her duty. Although the plaintiff stated, upon cross-examination, that from the time she first saw the truck about 150 feet away "[she] really didn't see it until [she] got out of the car after it had hit [her]," that fact would not warrant a conclusion that she went blindly across, without performing her duty to look and keep looking for approaching

traffic, and thereby violated the rule stated in *Shapiro et ux. v. Grabosky*, 320 Pa. 556, 559, 184 A. 83. The Supreme Court there cited with approval the opinion of KELLER, J., (now President Judge) in *Lewis v. Hermann*, 112 Pa. Superior Ct. 338, 171 A. 109, in which the plaintiff was held not contributorily negligent, as a matter of law, on practically similar facts. The plaintiff in that case was driving north on Windermere Avenue and when reaching the curb line of Winding Road which intersected it, slowed down almost to a stop, looked to the left and saw defendant's car coming east on Winding Road about 120 feet away. Being satisfied in her own mind that she could safely cross, she proceeded slowly, looking to her right, and she did not see defendant's car again until it was six feet from her on the left, at which time the front of her car had passed the middle of the intersecting street. At page 341, it was said: "Traffic moved both ways on both streets. Neither was a one-way street. Hence when plaintiff approached Winding Road her duty was to look first to the left for traffic coming from the west, and if she found it reasonably safe to proceed into the eastbound lane, it became her duty to look to the right for cars coming from the east. It was specially her duty to do so before she proceeded to cross the center into the westbound lane: *Wescott v. Geiger*, 92 Pa. Superior Ct. 80. She could not keep her eyes glued to the left or west. She would have been negligent had she done so and been hit by a car coming from her right."

That language is pertinent to the present case, especially when it is borne in mind that Farr's car was approaching the plaintiff from the opposite direction. She had traffic approaching her in two directions and a possibility of traffic in a third (i. e. from her right) and was not obliged to keep looking constantly "to the left." Moreover, since the plaintiff's car had reached the east curb line of McCallum Street when the de-

fendant's car struck its left front portion, it is difficult to conceive of any theory upon which she could be convicted by a trial judge of contributory negligence. Again, as pointed out in the opinion of the lower court: "There was ample space for the defendant, even though he failed to yield the right of way, to have gone around the rear of the plaintiff's automobile and avoided 'the accident."

We are not convinced there was anything in the case as presented by plaintiff and her witnesses which would have justified the trial judge in holding she had been guilty of contributory negligence as a matter of law. Her testimony showed a factual situation readily distinguishable from those presented in *Webb v. Hess,* 335 Pa. 401, 6 A. 2d 829, *Jaski v. West Park Daily Cleaners & Dyers, Inc.,* 334 Pa. 12, 5 A. 2d 105, and *Primio v. Haertter,* 115 Pa. Superior Ct. 564, 176 A. 58, cited and relied upon by defendant.

The defendant's version was to the effect that when he reached the intersection plaintiff was 125 feet west of the western curb line of McCallum Street and drove her car into his truck when he was three quarters of the way through. Both issues—defendant's negligence and plaintiff's alleged contributory negligence—were clearly for the jury. No complaint is made of the manner in which they were submitted.

Judgment affirmed